Williams v. Halliard.

Washington B. Williams, receiver &c.,                    | 38   373|
                                                         | 62   406|

v.

John Halliard et al.

A suit was brought by the receiver of an insolvent savings bank against persons who were its managers, some of whom were also its officers, to recover from them personally the amount of certain losses alleged to have been sustained by the bank during their term of office, by reason of investments on insufficient security of real estate, or on merely personal security; and through negligently permitting the president to overdraw his account, and not requiring of him bonds for the faithful performance of his duty as president, and through the treasurer's disbursing the bank's moneys without due authority. The bill further alleges that the defendants are trustees of the depositors, who as well as the creditors had no knowledge or notice of the defendants' mismanagement until after the insolvency of the bank had been announced, in 1878. The bank had a president, vice-president, secretary, treasurer, board of managers, and a finance and executive committee, each composed of three of the managers.—*Held*, on demurrer,

(1) That, in the absence of an allegation of cognizance of or complicity in the irregular or unsafe investments, the managers who were not on the committees in charge of those investments, were not personally liable therefor.

(2) That they were not responsible for illegal investments or overdrafts by the president made more than six years ago, and could set up the statute of limitations as a bar thereto.

(3) That they were not liable for not requiring the president, in their discretion, to furnish bonds for the faithful discharge of his official duties.

(4) That a charge against the treasurer of paying out the funds of the bank on investments before their approval by the finance committee, based on information merely and asking for discovery and relief, is too vague and indefinite to require an answer from him, and as he alone is concerned, to require the managers to answer this charge renders the bill multifarious.

Bill for relief.    On demurrer.

*Messrs. Vredenburgh & Garretson, Messrs. Bentley & Hartshorne, Mr. W. M. Dougherty, Mr. W. A. Lewis* and *Messrs. Collins & Corbin,* for demurrants.

*Mr. W. B. Williams (in pro. pers.)* and *Mr. John Linn,* for complainant.

THE CHANCELLOR.

This suit is brought by the receiver of the Mechanics and
Laborers Savings Bank against John Halliard, John McBride,
Hugh W. McKay, Patrick Reilly, Henry Carroll, Æneas Fitz-
patrick, Francis Stovekin, Charles W. Perveil, James Keary,
Sidney B. Bevans, Patrick Sheeran, Thomas C. O'Callaghan, John
McGuigan, Patrick Farrelly, Patrick Meehan, Robert Smyth,
Adam J. Dittmar, John Miller, Jeremiah C. Sweeney, Matthew
Monks, George P. Brock, Owen T. W. McDonald, James W.
Donelan and James J. Reed, who were managers of that institu-
tion, to establish and enforce the liability of the defendants to
make good sundry losses which the bank sustained during their
term of office as managers, or to which it will yet be subjected
by reason of their mismanagement of its affairs and disregard of
the provisions of its charter and of their duty as managers. The
misconduct charged is the investment of some of the money of
the bank on insufficient security of real estate; the investment
of other of its funds on merely personal security; the negli-
gently permitting the president, John Halliard, to withdraw,
without proper security, and apply to his own use, the funds of
the bank; the neglect to require him to give bond for the faith-
ful performance of his duty as president, and the disregard of his
duty by Patrick Reilly, as treasurer, in paying out moneys of the
bank without due authority for so doing. The bank was char-
tered in 1869 (*P. L. of 1869 p. 177*) and began business in that
year. It suspended on the 1st of November, 1878. The re-
ceiver was appointed, under proceedings in insolvency in this
court, March 7th, 1879. The charter provided that the bank
should invest no money in any public stocks other than such as
were created under the laws of the United States or of this state, or
of the state of New York, or the public stocks of Jersey City or
Newark, authorized by the laws of this state, or the stocks of the
cities of New York or Brooklyn, authorized by the laws of the
state of New York; that it should not invest on bond and mort-
gage, except the mortgage were of real estate worth at least double
the amount of the sum invested, above all encumbrances, and that
it should not invest in the stock of any incorporated company

Williams *v.* Halliard.

whatever. It also provided that the president, vice-president, treasurer and other officers of the bank should give such security for their fidelity and good conduct as the board of managers might from time to time require. By the by-laws the officers were declared to be a president, vice-president, secretary and treasurer, a finance committee and an executive committee of three members each, together with the president and vice-president, who should be *ex officio* members thereof. The by-laws declared that it was the duty of the finance committee to attend to all applications for loans, and that they should meet, as occasion might require, for the purpose of investing and loaning the funds, and for other purposes connected with their trusts; and that the executive committee should have the general charge and government of the bank, and from time to time lay down rules not inconsistent with the orders of the board or the by-laws, which should be binding until the next meeting of the board, when, if approved by the board, they should be of permanent obligation until revoked by the board; and that it should be their duty to examine the books, accounts and securities of the bank, and at the regular meetings of the board in May and November in each year, declare the rate of interest to be paid depositors for the preceding six months and report to the board, to be confirmed or rejected. Many of the defendants served on both of those committees from time to time; some served on only one and some on neither of them. The official connection of some of the defendants with the bank terminated more than six years before this suit was brought. The bill was filed April 14th, 1883. All the investments on real estate, and all the alleged mismanagement in reference thereto, occurred more than six years before this suit was begun. And so, too, as to all the loans on merely personal security, with the exception of two, one to S. E. Allen of $160, and the other to Charles M. Prior of $210, which were made in 1878. The bill states that the defendants negligently permitted Halliard, the president, to withdraw and misapply part of the funds, either on his personal security or without security or evidence of debt, which resulted in the loss of the money. All of the money taken by him was, with the exception of $1,667,

which were taken in 1878, taken more than. six years before the filing of the bill.

The claim to relief is based upon the theory that the defendants were trustees for the depositors and creditors of the bank, and the bill alleges that they concealed the negligence, violations of duty and losses complained of from the depositors and creditors, who remained ignorant of them until after the suspension of the bank. And again it states that the depositors and creditors were not aware of the alleged improper and negligent investments and loans on real and personal security, and are not affected with implied knowledge thereof, because the managers were not appointed or elected by them, and were not their agents or representatives, but were simply their trustees. Sixteen of the twenty-four defendants, viz., Keary, Farrelly, Meehan, Reilly, Murphy, Smyth, Kelly, McKay, O'Callaghan, Carroll, Monks, Sheeran, Miller, Sweeney, Donelan and McDonald, have filed general demurrers to the bill.

The charter made the managers the corporation. The suit is brought by the receiver in the place of the corporation. For damages for dereliction of duty of its managers or officers, suit must be brought by the corporation, unless, as in this case, it is under disability, and then the receiver must bring it. The depositors or creditors cannot bring it except when the corporation or its receiver refuses to do so. *Chester* v. *Halliard, 9 Stew. Eq. 313; Conway* v. *Halsey, 15 Vr. 462; Ackerman* v. *Halsey, 10 Stew. Eq. 356.*

Though such institutions as this bank, properly organized and conducted, are *quasi* charitable and purely benevolent institutions (*Hannon* v. *Williams, 7 Stew. Eq. 255*)—public trusts for the benefit of depositors (*Stockton* v. *Mech. &c. Bank, 5 Stew. Eq. 163,* and as to this bank, see section 5 of its charter)—the relation of their managers to the corporation does not differ essentially from that of directors of any other corporation to their company. *Hun* v. *Cary, 82 N. Y. 65.* The grounds of personal accountability are the same. For any willful breach of their trust or misapplication of the corporate funds, or for any gross neglect of or inattention to their official duties, they are

liable; but, as a general rule, they are only required, in the management of the affairs of the corporation, to keep within the limits of its powers and to exercise good faith and honesty. For a mere error of judgment they are not liable. Unless there has been some violation of the charter or other law or judicial order or direction, or there is shown to be a want of good faith or a willful abuse of discretion, or negligence, there will be no liability. In other words, they are bound to observe the requirements of law, and in the management of the affairs of the corporation to use such reasonable diligence and prudence as men usually exercise in the management of their own affairs of a similar nature. See *Ackerman* v. *Halsey, ubi supra*. Tried by these rules it is obvious, in the outset, that the defendants in this case cannot, merely on the ground that they were managers, be held indiscriminately liable for all the breaches of duty charged in the bill. By the by-laws the duty of making investments was devolved upon the finance committee, and the general charge and management of the affairs of the corporation upon the executive committee, and it was made the duty of the latter committee to examine the books, accounts and securities of the bank. Those of the managers who were not members of the finance committee at the time of the making of any unauthorized investment by which a loss has been or will be occasioned to the bank, cannot be held liable for such loss merely on the ground that they were managers. And managers who were not members of the executive committee cannot be chargeable, merely because they were managers, with loss occasioned through the neglect of duty on the part of the members of that committee. And so, too, any member of either of those committees who was not present at the doing of any reprehensible act by the committee would not be liable for the consequences of it if he were ignorant of the intention to do the act. *Joint Stock Discount Co.* v. *Brown, L. R. (8 Eq.) 381; Land Credit Co.* v. *Fermoy, L. R. (5 Ch. App.) 763; Ashhurst* v. *Mason, L. R. (20 Eq.) 225,* and *Cargill* v. *Bower, L. R. (10 Ch. Div.) 502.*

It is important to consider, in this connection, what the expectation of the legislature was as to the manner in which the business

would be conducted. There were to be fifteen managers, and they were not required by the charter to meet more than twice in each year, in June and December; whether they should meet oftener or not was left to the judgment of a majority of them, and any five of them, the president or vice-president being one, were to constitute a quorum. *Charter* § *3*. The legislature evidently contemplated the transaction of the business of the corporation by means of its committees and officers, as is done in the case of other similar corporations, and that there would be even less intervention therein by the managers at large than is usual in many of those corporations, and consequently that the committees and officers would have comparatively more power. It could not have intended to impose responsibility on the managers at large for the actions of the committees, whether they were cognizant of them or not. It could not have intended to make the managers at large guarantors for the committees. It is worthy of remark that there is no charge of fraud nor even of gross negligence in the bill.

But if it be conceded that there was responsibility on the part of the managers at large for the acts of the committees, inasmuch as the relation of the managers of this bank to the corporation was the same as that of directors of other corporations, they, like the latter, were liable to be prosecuted at law for their misconduct towards the bank. And as they would there have been entitled to the benefit of the statute of limitations, they will be so here also. The plea of the statute of limitations is a good defence to a suit in equity by a corporation against its directors for their misconduct in the management of its affairs. *Spering's Appeal, 71 Pa. St. 11.* To exempt a trust from the bar of the statute it must be a direct trust and of the kind belonging exclusively to the jurisdiction of a court of equity. *Angell on Lim.* § *166 ; Marsh* v. *Oliver, 1 McCart. 259 ; McClane* v. *Shepherd, 6 C. E. Gr. 76 ; Partridge* v. *Wells, 3 Stew. Eq. 176.* It follows that there can be no recovery for the losses occasioned by investments upon security of real estate mentioned in the bill, for they were all made more than six years before the filing of the bill. And so, too, as to the release

of which complaint is made, by which it is said a security was reduced to the detriment of the investment. It was given more than six years before this suit was begun. Of the unauthorized loans on merely personal security all except two, one for $160 to Allen, and the other for $210 to Prior, were, as before stated, made more than six years before the filing of the bill. It is alleged in the bill that the managers concealed their violations of duty, negligence and losses from the depositors and creditors, who remained ignorant of them, and the bill claims that the depositors and creditors are not to be held bound by the knowledge of them which the managers had. It is not stated how the concealment was made, not even in general terms that it was fraudulent. But apart from that, it is not alleged that there was any concealment from the corporation to which, and not to the depositors and creditors, the managers owed their duty as agents. In *Chester* v. *Halliard, 9 Stew. Eq. 313,* it was said that the depositors were but creditors of this corporation, and that its money squandered or lost by its officers is not the money of the depositors but is its money. See, also, *People* v. *Mechanics Sav. Inst., 92 N. Y. 7,* and *Conway* v. *Halsey, 15 Vr. 462.* For aught that is alleged or appears, and as was probably the case, the transactions complained of all fully appeared on the books of the institution. The charter provided that the office or place of business should be in Jersey City, and that the books should be at all times open to the inspection and examination of such persons as the legislature might from time to time delegate.

The bill complains that Halliard, the president, "borrowed or withdrew of the funds of the bank without other security than his note, check or bond," at various times, from 1872 to 1878, both inclusive, certain sums of money, amounting altogether to $12,392.88, all of which, except $1,667 alleged to have been borrowed or withdrawn in 1878, were taken more than six years before the filing of the bill. It also states that in 1872 (over ten years before this suit was brought) he withdrew and applied to his own use $20,000 of the funds of the bank, and that that misappropriation became known to the managers of the next and succeeding years; that in 1877 he assigned a bond and mortgage

for $10,000 to the bank, in partial payment of or as security for the $20,000; that the mortgage is in suit but the mortgagor is defending the suit; that the property is an insufficient security for the mortgage debt, and that Halliard is insolvent, and it claims that hence the bank will, because no official bond was taken from him, sustain a large loss by reason of those withdrawals or loans, and that the loss is chargeable to the managers and the person, Patrick Reilly, who was treasurer at the time of the loans or withdrawals. The president was elected yearly. Halliard was first elected in 1870, and held the office from that time until the failure of the bank, and no official bond was ever required from or given by him. The statements of the bill are not sufficient to charge the defendants with liability in respect to the moneys alleged to have been withdrawn or borrowed by Halliard. There is the general statement that they violated their duty by negligently permitting him to withdraw and misapply part of the funds of the bank, either on his personal security alone or without giving any security or even evidence of the debt; but it appears by the bill that the $20,000 taken in 1872 were taken without the knowledge of those who were the managers at the time. And all claim on account of that money would be barred by the statute of limitations. There is another statement in the bill that Halliard borrowed or withdrew from the bank certain sums of money, in all amounting to $12,392.88, in 1872, 1874, 1876 and 1878, without other security than his note, check or bond. But it is not charged that the managers were guilty of negligence or of any misconduct in relation thereto. Nor does it appear but that he took the money without their knowledge or the knowledge of any of them. It may be added that all the claim in respect to those moneys, except $1,667 taken in February, 1878, would be barred by the statute of limitations. Nor can it be successfully urged that the managers are liable because they omitted to take security from Halliard as president, for his fidelity and good conduct in office. The provision in the charter for giving bond by the officers of the bank is that the managers shall have power to choose a president, vice-president, and such other officers as to them shall

appear necessary, which officers so chosen shall continue in office for one year, and until others are chosen in their stead, and all officers so chosen shall give such security for their fidelity and good conduct as the board of managers may from time to time require. *P. L. 1869 p. 178 § 3.* The charter leaves it to the discretion of the board to require security or not. While the omission to require it of the treasurer would be exceedingly reprehensible, if not absolutely indefensible, in the case of some other officers, it could not justly be in anywise regarded as an abuse of discretion. It is not usual to require security for good conduct of the president or vice-president of a bank. They are selected on the ground of the possession of qualifications (the foremost of which is integrity) which render such a guaranty of fidelity and good conduct unnecessary, and fit them to protect the interests of the institution over which they are set. No charge is made in this bill against the managers on the ground that in electing Halliard president they afforded an opportunity to a person known to them to be unworthy of confidence to despoil the bank of its funds, but the charge is of dereliction of duty in not requiring him to give security for fidelity and good conduct as president. It may be added that the general charge and government of the bank were by the by-laws delegated to the executive committee, and the managers not on that committee are not accountable for an error of judgment unknown to them, if any there was on the part of that committee in not requiring such security from the president.

The provisions and restrictions of the charter in respect to investments must be regarded as clear evidence of the design of the legislature to prohibit the investment of the funds of the bank on personal security merely, and especially without any security at all. This intention is all the more manifest when the nature of the institution is considered—that it was a savings bank, designed to benefit the public by acting as the custodian of the savings of persons of small means to invest them safely for the advantage of the depositors. The loans made on personal security alone were therefore unauthorized, and in violation of the duty of the managers.

But it does not appear by whom the loans on personal security, merely, were made. It was the duty of the finance committee to make investments. If the loans to Allen and Prior were made by that committee, its members who authorized them would be responsible for the loss occasioned thereby. The liability for the other loans is barred by the statute of limitations. But the other managers, not on that committee, would not be liable, on the statements of the bill, for those two loans; for though it is alleged that from the beginning of the investments the managers adopted the plan of loaning savings deposits upon the security of promissory notes of borrowers, it does not appear that the loans to Allen and Prior were made in pursuance of any direction or regulation or custom for which the managers at large were responsible, nor but that they were made as other loans were, by the persons who, under the by-laws, were charged with the duty of making the investments—the finance committee—and on their responsibility alone, and without the knowledge of the other managers. The charge of liability for the loans on personal security is insufficient. To charge those of the managers who were not members of the finance committee with responsibility for these loans, there must be something more than merely the relation existing between them—that of board of managers and committee. The statements on which it is sought to charge them must be sufficient in character, and must possess reasonable certainty.

The bill contains a charge against the treasurer, Patrick Reilly, but it is on information, and is entirely too vague and indefinite to require an answer. The statement is that he was specially intrusted with the custody of the funds, and was bound to pay them out only on depositors' drafts duly made, or for proper expenditures, and, in case of money invested, only after the investment had been submitted to and approved by the finance committee; that if he paid out the funds for investments without this approval, he did so in violation of his trust, and became thereby responsible for any ensuing loss; that the complainant is informed and charges that such payments and such loss took place in some instances (referring to the investments complained

Williams v. Halliard.

of and the withdrawal of money by or loans to Halliard) mentioned in the bill, but which of them he is unable to specify until proofs are taken in the cause. This statement, if such it may be called, is too vague and uncertain to warrant the court in requiring Reilly to answer it. The complainant alleges that he is informed (the statement is not even accompanied by the allegation that he believes the information is true) that such payments and such loss took place in some instances, but which he cannot specify. This statement is insufficient. See *Wigram on Discovery 77*. In *East India Company* v. *Henchman, 1 Ves., Jr., 287*, where the bill charged the defendant, in a very vague manner, with making profits in fraud of his engagements with his employers, and prayed an account of those profits, a demurrer was allowed on the ground of the vagueness and uncertainty of the charges. In that case there were circumstances stated and a general charge made. Here there is nothing but a general and vague charge on information, lacking every element which is requisite to certainty in pleading.

The bill seeks, on this head, discovery and relief against Reilly for dereliction of duty as treasurer. Obviously that is a matter in which he alone is concerned, and in which the other defendants have no interest, and as to which they ought not to be called upon to answer. This makes the bill multifarious.

The result of the views hereinbefore expressed as to the liability of the defendants is that the claim for relief on the ground of the alleged misconduct in regard to the loans upon real estate security is barred by the statute of limitations, and so, too, as to the claim for relief on the ground of misconduct in making loans on merely personal security, except as to the loans to Allen (of $160) and Prior (of $210); and that as to those, the charge is insufficient. As to the relief sought on the ground of Halliard's withdrawal and misapplication of funds, all the items except that of 1878—$1,667—are barred by the statute of limitations. The defendants Fitzpatrick, Stovekin, Perveil, Keary, Bevans, McGuigan and Farrelly were not managers in 1878, and though Meehan was, his term did not begin

until after the withdrawal of that money.    But as to that item, the statements of the bill are not sufficient to fix liability.    The demurrers will be allowed.